UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK HAMMER,                           :
                                       :
          Plaintiff,                   :     Case No._____
                                       :
     v.                                :
                                       :     **COMPLAINT FOR VIOLATIONS OF**
ALDER BIOPHARMACEUTICALS, INC.,        :     **THE FEDERAL SECURITIES LAWS**
ROBERT W. AZELBY, PAUL R. CARTER,      :
PAUL B. CLEVELAND, JEREMY C.           :     JURY TRIAL DEMANDED
GREEN, A. BRUCE MONTGOMERY,            :
HEATHER PRESTON, CLAY B. SIEGALL,      :
and WENDY L. YARNO,                    :
                                       :
          Defendants.                  :
                                       :

Plaintiff Mark Hammer ("Plaintiff"), by and through his undersigned counsel, for his

complaint against defendants, alleges upon personal knowledge with respect to himself, and

upon information and belief based upon, *inter alia*, the investigation of counsel as to all other

allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Alder BioPharmaceuticals, Inc. ("Alder" or the

"Company") against the members of its Board of Directors (the "Board" or the "Individual

Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange

Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e) and 78t(a), and to enjoin the

expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which

Alder will be acquired by H. Lundbeck A/S, a Danish *aktieselskab* ("Lundbeck"), through its

wholly owned subsidiaries Lundbeck LLC ("Payor") and Violet Acquisition Corp. ("Purchaser")

(the "Proposed Transaction").

2.      On September 16, 2019, Alder and Lundbeck issued a joint press release announcing they had entered into an Agreement and Plan of Merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, on September 23, 2019, Purchaser commenced the Tender Offer to purchase all outstanding shares of Alder for (a) $18.00 per share in cash, and (b) one contingent value right ("CVR") per share, representing the right to receive $2.00 per share if a certain milestone is achieved (together, the "Offer Price").   The Tender Offer is scheduled to expire at one minute after 11:59 p.m., Eastern Time, on October 21, 2019.   The Proposed Transaction is valued at approximately $1.95 billion net of cash.

3.      On September 23, 2019, defendants filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the U.S. Securities and Exchange Commission ("SEC").   The Recommendation Statement, which recommends that Alder stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections, including those relied upon by Alder's financial advisor Centerview Partners LLC ("Centerview") in its financial analyses; (ii) the background process leading to the Proposed Transaction;  (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; and (iv) Company insiders' potential conflicts of interest.   Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act.

4.      In short, the Proposed Transaction will unlawfully divest Alder's public stockholders of the Company's valuable assets without disclosing all material information concerning the Proposed Transaction to Company stockholders.   To remedy defendants'

Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the 1934 Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the 1934 Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.    This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Alder's common stock trades on the NASDAQ Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.    Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Alder.

9.    Defendant Alder is a Delaware corporation with its principal executive offices located at 11804 North Creek Parkway South, Bothell, Washington 98011.  Alder is a clinical-stage biopharmaceutical company focused on transforming migraine treatment through the discovery, development and commercialization of novel therapeutic antibodies.  The Company's

common stock is traded on the NASDAQ Global Select Market under the ticker symbol "ALDR."

10.     Defendant Robert W. Azelby ("Azelby") has been President, Chief Executive Officer ("CEO") and a director of the Company since June 2018.

11.     Defendant Paul R. Carter ("Carter") has been a director of the Company since September 2015.

12.     Defendant Paul B. Cleveland ("Cleveland") has been a director of the Company since August 2015 and Chairman of the Board since November 2018.   Defendant Cleveland previously served as the Company's Interim President and CEO from March 2018 to June 2018.

13.     Defendant Jeremy C. Green ("Green") has been a director of the Company since April 2018.

14.     Defendant A. Bruce Montgomery ("Montgomery") has been a director of the Company since October 2010.

15.     Defendant Heather Preston ("Preston") has been a director of the Company since December 2007.

16.     Defendant Clay B. Siegall ("Siegall") has been a director of the Company since September 2005.

17.     Defendant Wendy L. Yarno ("Yarno") has been a director of the Company since April 2017.

18.     Defendants Azelby, Carter, Cleveland, Green, Montgomery, Preston, Siegall and Yarno are collectively referred to as the "Individual Defendants" or the "Board."

## OTHER RELEVANT ENTITIES

19.    Lundbeck is a Danish aktieselskab with its principal executive offices located at Ottiliavej 9, DK-2500 Valby, Copenhagen, Denmark.  Lundbeck is a global pharmaceutical company specialized in brain diseases.  Lundbeck's common stock is traded on the Copenhagen Stock Exchange under the ticker symbol "LUN.CO."

20.    Payor is a Delaware limited liability company and an indirectly wholly owned subsidiary of Lundbeck.

21.    Purchaser is a Delaware corporation and a wholly owned subsidiary of Lundbeck.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22.    Alder is a clinical-stage biopharmaceutical company focused on transforming migraine treatment through the discovery, development and commercialization of novel therapeutic antibodies.

23.    Alder's lead product candidate, eptinezumab, is an investigational monoclonal antibody ("mAb") delivered by infusion that inhibits the calcitonin gene-related peptide ("CGRP") for the prevention of migraine.  Eptinezumab was designed for 100% bioavailability delivered via quarterly 30-minute IV infusion with high specificity and strong binding for rapid, robust, and sustained suppression of CGRP.

24.    Eptinezumab has been studied in multiple global, randomized, double-blind, placebo-controlled studies to assess its safety and efficacy in both chronic and episodic migraine prevention.  To date, more than 3,100 patients have been included in the clinical development program.

25.    PROMISE-1 (PRevention Of Migraine via Intravenous eptinezumab Safety and Efficacy-1) was a phase III randomized, double-blind, placebo-controlled international trial

evaluating the safety and efficacy of eptinezumab for prevention of episodic migraine.  In the study, patients (n=888) were randomized to receive up to four IV doses of eptinezumab (30 mg, 100 mg or 300 mg) or placebo, administered by infusion every 12 weeks.  To be eligible for the trial, patients must have experienced at most 14 headache days per month, of which at least four met the criteria for migraine.

26.     In June 2017, Alder announced that eptinezumab met the following primary endpoints and key secondary endpoints in PROMISE-1:

- Primary endpoint was mean change from baseline in monthly migraine days over the 12-week treatment period
    - Statistically significant reductions in monthly migraine days from a baseline average of 8.6 days to 4.3 monthly migraine days for 300 mg (p=0.0001) and 3.9 days for 100 mg (p=0.0179) compared to a 3.2 days for placebo
- Key secondary endpoints achieved by both doses of eptinezumab were responders rates of 75% or greater at weeks 1 – 4.
    - Day 1 clinical benefit: ³50% reduction in the proportion of patients treated with eptinezumab 100 mg or 300 mg experiencing a migraine on Day 1 post-dose, compared to a 25% reduction in patients that received placebo
    - Significant 75% responses: ~1/3 of patients treated with eptinezumab 100 mg or 300 mg achieved a ³75% reduction in migraine days by Month 1.
    - On average of 1 in 5 patients had 100% response: no migraines in any given month

27.     PROMISE-2 (PRevention Of Migraine via Intravenous ALD403 Safety and Efficacy 2) was a phase III, randomized, double-blind, placebo-controlled international trial evaluating the safety and efficacy of eptinezumab for chronic migraine prevention.  In the study, patients (n=1,072) were randomized to receive eptinezumab (100 mg or 300 mg) or placebo, administered by infusion once every 12 weeks.  To be eligible for the trial, patients must have experienced at least 15 headache days per month, of which at least eight met the criteria for

migraine.  Patients who participated in the trial had an average of 16.1 migraine days per month at baseline.

28.     On January 8, 2019, Alder announced that eptinezumab met the primary endpoint and all key secondary endpoints in PROMISE-2:

- Primary endpoint was mean change from baseline in monthly migraine days over the 12-week, double-blind treatment period:
  - Statistically significant reductions in monthly migraine days from baseline: 8.2 monthly migraine days for 300 mg (p=0.0001) and 7.7 days for 100 mg (p=0.0001) compared to an average 3.2 days for placebo
- Key secondary and other endpoints met, including reduction in the percentage of patients experiencing migraine on the day following administration and reduction of migraine prevalence days 1-28, reduction of at least 50%, 75%, and 100% from baseline in mean monthly migraine days assessed through 12 weeks, change from baseline in mean monthly acute migraine-specific medication days, and reductions from baseline in patient-reported impact scores on the Headache Impact Test (HIT-6).
  - Day One prevention: >50% reduction in migraine beginning Day One post-infusion in patients treated with eptinezumab 100 mg or 300 mg compared to 27% for placebo, p<0.0001
  - Over Months 1 through 3 after a single IV administration, 58% and 61% of patients achieved 50% or greater reduction in migraine days from baseline compared to 39% for placebo, p<0.0001
  - 100% reduction in migraine days was achieved by 11% and 15% of patients with chronic migraine who were treated with eptinezumab 100 mg or 300 mg, respectively, each month, on average, for Months 1, 2, and 3, compared with 5% of patients who received placebo (post hoc, unadjusted)
  - All other pre-specified key secondary endpoints were met with statistical significance

29.     If approved by the U.S. Food and Drug Administration ("FDA"), eptinezumab will be the first quarterly, anti-CGRP infusion therapy for migraine prevention.  Alder plans to initiate a phase III clinical trial evaluating eptinezumab as a treatment for acute migraine in the second half of 2019.  The trial will seek to leverage eptinezumab's immediate and complete bioavailability, with the objective of securing an indication for the acute treatment of migraine.

30.     Alder is also developing ALD1910, a preclinical mAb that inhibits pituitary adenylate cyclase-activating polypeptide-38 ("PACAP-38") for migraine prevention.  PACAP has emerged as an important signaling molecule in the pathophysiology of migraine and represents an attractive novel target for treating migraine.  ALD1910 may hold potential as a migraine prevention treatment for those who have an inadequate response to other therapies and could provide another mechanism-specific therapeutic option for migraine patients and their physicians.  Good Manufacturing Practice and Investigational New Drug-enabling studies are underway

31.     On August 6, 2019, Alder announced its second quarter 2019 financial and operating results.  The Company highlighted:

- **Commercial readiness activities ongoing under the leadership of recently appointed chief commercial officer, Nadia Dac:** As Alder prepares for the potential commercial launch of eptinezumab in the U.S. in the first quarter of 2020, the company has conducted new market research that further confirms eptinezumab's differentiated profile and is prepared to begin account-level engagement with payers. The company plans to focus its marketing efforts on the high-prescribing headache specialist population and accounts, where eptinezumab fits well into their treatment protocols of quarterly patient visits with its short, 30-minute IV administration and its well-tolerated safety profile, as demonstrated in the company's clinical trials. The company plans to utilize a specialty sales organization sized between 75 and 100 sales representatives.
- **New migraine-free months, migraine severity and quality of life data presented at AHS Annual Meeting:** In July 2019, Alder presented new data from post-hoc analyses from its PROMISE 1 and PROMISE 2 Phase 3 clinical trials for eptinezumab at the American Headache Society's (AHS) 61st Annual Scientific Meeting in Philadelphia, PA from July 11-14, 2019.  Key highlights from the new data presented show 18.1% of episodic migraine patients treated with 100 mg of eptinezumab experienced no migraine days for at least half of the study period (≥six months), compared with 12.6% of placebo-treated patients, and 14.0% of chronic migraine patients treated with 100 mg of eptinezumab experienced no migraine days for at least half of the study period (≥three months), compared with 4.9% of placebo-treated patients. Data presented from PROMISE 2 also showed consistent clinically significant improvements in migraine severity in chronic migraine patients, a large contributor to impact on quality of life, starting at Month 1.

Eptinezumab treatment resulted in clinically meaningful improvements in Headache Impact Test (HIT-6) scores in chronic migraine patients as early as Month 1 after treatment, which were maintained or further improved throughout the six-month study period, compared to placebo, which did not achieve a clinically meaningful improvement until Month 6. In addition, eptinezumab treatment resulted in clinically meaningful improvements greater than placebo in the 36-item Short-Form Health Survey (SF-36) scores in chronic migraine patients as early as Month 1 after treatment and through the six-month study period. From a safety perspective, longer-term exposure has demonstrated no change in the overall safety profile for eptinezumab.

- **Data showing consistency of rapid onset of migraine prevention and improvements in most bothersome migraine symptoms and patient reported outcomes data presented at AAN Annual Meeting:** In May 2019, Alder presented efficacy data highlighting the consistency of the rapid onset of migraine prevention across four clinical trials with eptinezumab at the 71st American Academy of Neurology (AAN) Annual Meeting in Philadelphia, PA from May 4-10, 2019. Across the Phase 2 and Phase 3 clinical trials, it was observed that eptinezumab, with its 100% bioavailability at the end of infusion, showed a rapid onset of migraine prevention. The rapid response observed on both Day 1 and through Month 1 in PROMISE 1 and PROMISE 2 was also sustained through the first quarter following a single eptinezumab infusion, and was maintained or further increased through subsequent infusions. Alder also presented a new analysis of patient-reported outcomes data from the PROMISE 2 Phase 3 clinical trial of eptinezumab for the prevention of chronic migraine, showing improvements in the most bothersome migraine symptoms and patients' global impression of change in their migraine status by Month 1 after treatment, with improvements sustained in overall response through the first and second quarterly infusions.

32.     Additionally, the Company reported the following anticipated milestones:

- **Eptinezumab PDUFA target action date set for early 2020:** The U.S. Food and Drug Administration (FDA) accepted the Biologics License Application (BLA) filing for eptinezumab in April 2019, and set a Prescription Drug User Fee Act (PDUFA) target action date of February 21, 2020. If approved, eptinezumab will be the first-to-market IV therapy for migraine prevention, providing rapid and sustained prevention that begins on Day 1.
- **Acute study for eptinezumab to begin in 2H 2019:** Alder plans to initiate a Phase 3 clinical trial evaluating eptinezumab as a treatment for acute migraine in patients who are candidates for prevention therapy in the second half of 2019. The trial will seek to leverage eptinezumab's 100% bioavailability and rapid onset of prevention demonstrated in clinical testing, with the objective of securing an indication for the acute treatment of migraine for patients and positioning eptinezumab as the first anti-CGRP monoclonal antibody for both the treatment and prevention of migraine, if approved for both these indications.

- **ALD1910 to enter clinical development in 2019:** Alder continues to advance its preclinical candidate, ALD1910, a monoclonal antibody targeting PACAP (pituitary adenylate cyclase-activating peptide) for migraine prevention. ALD1910 is currently undergoing Investigational New Drug (IND)-enabling preclinical studies. Alder expects to initiate a first in-human clinical study by the end of 2019.

33.    Defendant Azelby commented on the second quarter results, stating:

We continue to make significant progress toward the potential launch of eptinezumab in the U.S. in the first quarter of 2020.  We have our commercial leadership team in place, with experienced personnel leading sales, marketing and market access.  The team is sharpening our go-to-market strategy and expects to complete our commercial footprint later this year. We recently presented additional data further confirming eptinezumab's differentiated clinical profile and benefits in patient-reported outcomes at the 2019 American Headache Society and American Academy of Neurology Annual Meetings.  Looking forward, we believe there is a large opportunity to build value at Alder in the latter half of the year, with the initiation of eptinezumab's acute study and the advancement of our product candidate, ALD1910, into the clinic.  These collective activities align with our mission to forever change the migraine treatment landscape and give people with migraines their lives back.

**The Proposed Transaction**

34.    On September 16, 2019, Alder and Lundbeck issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

**Valby, Denmark and Bothell, Washington, USA, 16 September 2019** - H. Lundbeck A/S (Lundbeck) and Alder BioPharmaceuticals (NASDAQ: ALDR) (Alder) today announced a definitive agreement for Lundbeck to acquire Alder. Under the terms of the agreement, Lundbeck will commence a tender offer for all outstanding shares of Alder, whereby Alder stockholders will be offered an upfront payment for USD 18.00 per share in cash, along with one non-tradeable Contingent Value Right (CVR) that entitles them to an additional USD 2.00 per share upon approval of eptinezumab by the European Medicines Agency (EMA), representing a total potential consideration of USD 20.00 per share. The transaction is valued at up to USD 1.95 billion (approximately DKK 13 billion) net of cash, on a fully diluted basis.

Alder is a clinical-stage biopharmaceutical company committed to transforming migraine treatment through the discovery, development and commercialization of novel therapeutic antibodies. Through this acquisition, Lundbeck will continue to expand the range of brain diseases for which the company brings its leading and best-in-class therapies to patients. In addition, by acquiring Alder, Lundbeck will

further enhance its capabilities to deliver future biological innovations in brain diseases.

Alder is developing eptinezumab for the preventive treatment of migraine in adults. Eptinezumab is an investigational monoclonal antibody (mAb) that is administered as a quarterly 30-minute IV infusion. Eptinezumab was designed for immediate and complete bioavailability with high specificity and strong binding for suppression of calcitonin gene-related peptide (CGRP), a neuropeptide believed to play a key role in mediating and initiating migraines. If approved by the U.S. Food and Drug Administration (FDA), it will be the first IV CGRP therapy for migraine prevention. Alder is also developing ALD1910, a mAb designed to inhibit pituitary adenylate cyclase-activating polypeptide (PACAP) for migraine prevention. Eptinezumab, together with ALD1910, will help establish Lundbeck as an emerging leader in migraine and other pain syndromes.

Alder submitted a Biologics License Application (BLA) to the FDA for eptinezumab in February 2019 and the FDA has set a Prescription Drug User Fee Act (PDUFA) action date of 21 February 2020. Lundbeck expects to submit eptinezumab for approval to regulatory authorities in the European Union during 2020, followed by submissions for approval in other regions around the world including China and Japan.

**Strategic benefits**
The proposed transaction is anticipated to significantly strengthen Lundbeck's business as early as 2020, accelerating the build of Lundbeck's late-stage pipeline and providing access to new capabilities in the monoclonal antibody field. The addition of eptinezumab will expand Lundbeck's leading global brain disease franchise. Lundbeck intends to leverage its proven expertise in neuroscience, and its highly effective organization across 56 countries, to maximize the opportunity to serve patients suffering from brain diseases, including migraine.

The acquisition of Alder will support Lundbeck's aim to deliver long-term sustainable growth and is consistent with capital allocation priorities. The transaction is expected to accelerate and diversify Lundbeck's revenue growth with the expected U.S. launch of eptinezumab for preventive treatment of episodic and chronic migraine in 2020 and the expected expansion of indications for the product. Lundbeck will gain an early-stage antibody, ALD1910, against a separate target for migraine and other pain syndromes with the potential to leverage the expertise in migraine across a broader product offering. Lundbeck will also gain access to a team with strong monoclonal antibody expertise, accelerating Lundbeck's capabilities in this arena. The transaction is expected to be core EPS accretive in 2023 assuming FDA approval in the first quarter of 2020 followed by regulatory approvals in other regions including Europe.

"As a global leader in neuroscience research with products registered in more than 100 countries and a strong network of neurology specialists, Lundbeck is the ideal

partner to advance Alder's mission of changing the treatment paradigm for migraine prevention. We believe this positions eptinezumab for a successful launch both in and outside of the United States," said Bob Azelby, Alder's president and chief executive officer. "Importantly, today's news provides Alder shareholders with significant and immediate cash value, as well as the ability to benefit further once eptinezumab is approved by the EMA. Looking ahead, we expect Lundbeck will leverage Alder's expertise in antibody development to explore additional indications for eptinezumab and continue the development of ALD1910."

**Terms, closing conditions and financing**

Under the terms of the agreement, Lundbeck will commence a tender offer for all outstanding shares of Alder, whereby Alder stockholders will be offered an upfront payment for USD 18.00 per share in cash, along with one non-tradeable Contingent Value Right (CVR) of USD 2.00 per share. The upfront cash consideration represents a 79% premium to Alder's shareholders based on the closing price on 13 September 2019 and an approximately 3% discount based on the 52-week high share price.

The non-tradeable CVR will be paid upon the approval by the European Commission of a "Marketing Authorization Application" in the European Union, through the centralized procedure. The terms of the CVR payment reflect the parties' agreement over the sharing of potential economic upside benefits from such approval. There can be no assurance such approval will occur or that any contingent payment will be made.

Lundbeck will acquire any shares of Alder not tendered into the tender offer through a merger for the same per share consideration as will be payable in the tender offer. The merger will be effected as soon as practicable after the closing of the tender offer.

The Board of Alder has unanimously approved the transaction and Alder will file a recommendation to shareholders recommending they tender their shares to Lundbeck. The transaction is expected to close in the fourth quarter of 2019, subject to customary closing conditions, including the tender of more than 50% of all shares of Alder outstanding at the expiration of the offer and receipt of required regulatory clearances, which includes a Hart-Scott-Rodino review in the U.S. The terms and conditions of the tender offer will be described in the tender offer documents, which will be filed with the U.S. Securities and Exchange Commission.

Lundbeck expects to fund the acquisition through existing cash resources and bank financing.

## Insiders' Interests in the Proposed Transaction

35.     Alder insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Alder.

36.     Alder insiders stand to reap substantial financial benefits for securing the deal with Lundbeck.  Pursuant to the Merger Agreement, upon consummation of the Proposed Transaction, all outstanding Company stock options and restricted stock units ("RSUs") awards will vest and convert into the right to receive cash payments.  The following table sets forth the number and value of stock options and RSU awards held by the Company's directors and executive officers:

| Name of Executive Officer or Director | Number of Shares Subject to Vested In the Money Options (#) | Cash Consideration for Vested In the Money Options ($) | Number of Shares Subject to Unvested In the Money Options (#) | Cash Consideration for Unvested In the Money Options ($) | Number of CVRs Issued in Respect of In the Money Options (#) | Maximum Cash Payment for CVRs Issued in Respect of In the Money Options ($) | Number of Phantom CVRs in Respect of Out of the Money Options (#) | Maximum Cash Payment for Phantom CVRs in Respect of Out of the Money Options ($) |
|---|---|---|---|---|---|---|---|---|
| Robert W. Azelby | 462,500 | 832,500 | 1,192,500 | 3,257,500 | 1,655,000 | 3,310,000 | — | — |
| Paul B. Cleveland | 115,000 | 621,500 | 22,500 | 157,275 | 137,500 | 275,000 | — | — |
| Randall C. Schatzman | 489,695 | 4,476,407 | — | — | 489,695 | 979,390 | — | — |
| Carlos Campoy | — | — | 270,000 | 1,755,000 | 270,000 | 540,000 | — | — |
| Larry K. Benedict | — | — | — | — | — | — | — | — |
| Erin M. Lavelle | 106,250 | 366,563 | 343,750 | 1,268,438 | 450,000 | 900,000 | — | — |
| Elisabeth A. Sandoval | — | — | — | — | — | — | — | — |
| James B. Bucher | 44,480 | 241,578 | 265,520 | 1,198,622 | 310,000 | 620,000 | — | — |
| Other Executive Officers as a group (4) | 297,820 | 2,121,996 | 893,541 | 3,987,601 | 1,191,361 | 2,382,722 | — | — |
| Paul R. Carter | 30,000 | 54,000 | 22,500 | 157,275 | 52,500 | 105,000 | — | — |
| Wendy L. Yarno | 30,000 | 54,000 | 22,500 | 157,275 | 52,500 | 105,000 | 30,000 | 7,500 |
| Jeremy C. Green | 25,000 | 85,500 | 42,500 | 253,275 | 67,500 | 135,000 | — | — |
| Heather Preston | 15,000 | 16,500 | — | — | 15,000 | 30,000 | — | — |
| Clay B. Siegall | 61,815 | 488,784 | 22,500 | 157,275 | 84,315 | 168,630 | — | — |
| A. Bruce Montgomery | 61,816 | 491,948 | 22,500 | 157,275 | 84,316 | 168,632 | — | — |

37.     Further, if they are terminated in connection with the Proposed Transaction, Alder's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Name[1] | Cash ($)[2] | Equity ($)[3] | Pension/NQDC ($) | Perquisites/ Benefits ($)[4] | Tax Reimbursement ($)[5] | Total ($) |
|---|---|---|---|---|---|---|
| Robert W. Azelby | 2,394,000 | 5,942,500 | — | 50,048 | — | 8,386,548 |
| Paul B. Cleveland | — | 202,275 | — | — | — | 202,275 |
| Randall C. Schatzman | — | — | — | — | — | — |
| Carlos Campoy | 1,025,000 | 2,295,000 | — | 26,555 | — | 3,346,555 |
| Larry K. Benedict | — | — | — | — | — | — |
| Erin M. Lavelle | 1,028,000 | 2,189,618 | — | 37,536 | — | 3,255,145 |
| Elisabeth A. Sandoval | — | — | — | — | — | — |
| James B. Bucher | 1,039,013 | 2,042,042 | — | 37,536 | — | 3,118,591 |

## The Recommendation Statement Contains Numerous Material Misstatements or Omissions

38.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Alder's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal.

39.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections, including those relied upon by Alder's financial advisor Centerview in its financial analyses; (ii) the background process leading to the Proposed Transaction;  (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; and (iv) Company insiders' potential conflicts of interest.  Accordingly, Alder stockholders are being asked to make a tender or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning Alder's Financial Projections*

40.     The Recommendation Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

41.     The Recommendation Statement sets forth:

[I]n connection with the evaluation of the proposed transaction with Lundbeck and other strategic alternatives, Alder's senior management prepared certain non-public, unaudited prospective financial information for fiscal years 2019 through 2037, **including product-level performance detail for fiscal years 2019 through 2037** (the "*Management Projections*"). The Management Projections were provided to the Alder Board in considering, analyzing and evaluating the Offer and the Merger, as well as potential strategic alternatives for Alder. In addition, the Management Projections were provided to Centerview, Alder's financial advisor, and were relied upon by Centerview in connection with the rendering of Centerview's fairness opinion to the Alder Board and in performing the related financial analyses as described below under "— *Opinion of Alder's Financial Advisor*" and were the only financial projections with respect to Alder used by Centerview in performing such financial analyses.

Recommendation Statement at 24-25 (emphasis added). The Recommendation Statement fails, however, to set forth the product-level performance detail for fiscal years 2019 through 2037 for each of Alder management's Case A, Case B and Case C projections.

42.     In addition, the Recommendation Statement fails to disclose unlevered free cash flows for the years 2019 through 2037 for each of the Case A and Case C projections, to the extent they were calculated by Centerview or Company management.

43.     Moreover, the Recommendation Statement sets forth:

On September 15, 2019, the Alder Board held a meeting by teleconference, attended by members of Alder's senior management and representatives from Skadden and Centerview. . . . At the direction of Alder's management, representatives of Centerview updated the Alder Board as to a change provided to Centerview by Alder's management to the projected cash balance and net operating losses previously provided by Alder's management and the resulting revisions to Centerview's financial analyses presented to the Alder Board on September 14, 2019, of the proposed Offer Price.

*Id.* at 17. Yet, the Recommendation Statement fails to disclose Alder management's change to the projected cash balance and net operating losses, the basis for this change, and the resulting revisions made to Centerview's financial analyses. Without this information, Alder stockholders cannot assess the eleventh hour revision to the Company's financials, and whether the revision

was proper or engineered to make the Offer Price appear more favorable.

44.    The omission of this information enders the statements in the "Certain Financial Projections" and "Opinion of Alder's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

45.    The Recommendation Statement omits material information relating to the sale process leading up to the Proposed Transaction.

46.    For example, the Recommendation Statement sets forth:

[C]ommencing in September 2018, at the instruction of the Alder Board, management of Alder began actively exploring a potential partnership regarding the commercialization of Eptinezumab outside of the United States (the "Ex-U.S. Partnership").

* * *

Alder entered into non-disclosure agreements with eleven (11) counterparties, including Lundbeck, in anticipation of exchanging confidential information to evaluate an Ex-U.S. Partnership. Alder entered into the Nondisclosure Agreement with Lundbeck on January 9, 2019, which contained a standstill provision. ***Two (2) other nondisclosure agreements entered into by Alder contained standstills which, by their terms, remain in effect following the announcement of this transaction and the execution of the Merger Agreement.*** One (1) of these two (2) counterparties did not pursue the Ex-U.S. Partnership after conducting preliminary due diligence investigations, and the other counterparty submitted terms for the Ex-U.S. Partnership that were not viewed as competitive by the Alder Board. Following the entry into nondisclosure agreements, Lundbeck and nine (9) other counterparties conducted due diligence investigations on Eptinezumab with respect to a potential Ex-U.S. Partnership.

*Id.* at 13 (emphasis added).  Critically, the Recommendation Statement fails to expressly indicate whether the non-disclosure agreements containing standstill provisions that the Company entered into with two counterparties contain "don't-ask, don't-waive" standstill provisions that are presently precluding either of these counterparties from submitting a topping bid for the Company.

16

47.     The disclosure of the terms of these non-disclosure agreements is crucial to Alder stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

48.     Additionally, the Recommendation Statement sets forth:

During February and March 2019, Alder received proposed term sheets from five (5) potential counterparties for the Ex-U.S. Partnership, including Lundbeck.

* * *

At a meeting held on March 27, 2019, the Alder Board, together with Alder's management, reviewed these term sheets, taking into consideration various factors that could impact the potential partnership, including such counterparty's resources and reputation, the economic terms and the likelihood of a successful commercial launch of Eptinezumab. The Alder Board considered various strategic alternatives, including multiple potential partnership arrangements. Following discussions, the Alder Board directed management to pursue the Ex-U.S. Partnership with Lundbeck.

*Id.* The Recommendation Statement fails, however, to disclose the details of any of the term sheets Alder received from these potential counterparties other than Lundbeck. Accordingly, Company stockholders are left without the material information necessary to evaluate the competing level of interest that was submitted to Alder. The Company's stockholders are entitled to an accurate description of the "process" that the directors took in coming to their decision to support the Proposed Transaction.

49.     The omission of this information renders the statements in the "Background of the Offer and the Merger" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Financial Analyses***

50.     The Recommendation Statement describes Centerview's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of

Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Alder's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to tender their shares in the Proposed Transaction or seek to exercise their appraisal rights.

51.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 11.0% to 13.0%; (ii) the implied terminal value of the Company; and (iii) the basis for assuming unlevered free cash flows would decline in perpetuity after December 31, 2037 at a rate of free cash flow decline year-over-year of 80.0%.

52.     With respect to Centerview's *Selected Public Company Analysis* and *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by Centerview, respectively.

53.     The omission of this information renders the statements in the "Opinion of Alder's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

54.     The Recommendation Statement fails to disclose material information concerning the conflicts of interest faced by Alder insiders.

55.     For example, the Recommendation Statement states: "It is possible that Continuing Employees, including the executive officers, will enter into new compensation arrangements with Lundbeck or its affiliates. Such arrangements may include agreements

regarding future terms of employment, the right to receive equity or equity-based awards of Lundbeck or retention awards."  Id. at 10-11.  Yet, the Recommendation Statement fails to disclose whether any members of Alder management are continuing with the combined company, and the details of any employment and retention-related discussions and negotiations that occurred between Lundbeck and Alder's executive officers, including who participated in all such communications, when they occurred and their content.  The Recommendation Statement further fails to disclose whether any of Lundbeck's prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

56.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57.     The omission of this information renders the statements in the "Background of the Merger" and "Arrangements Between Alder and its Executive Officers, Directors and Affiliates" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

58.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Alder stockholders will be unable to make a fully-informed tender or appraisal decision in connection with the

Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the 1934 Act and SEC Rule 14d-9**

59.     Plaintiff repeats all previous allegations as if set forth in full.

60.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Alder stockholders to tender their shares in the Tender Offer.

61.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

62.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

63.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

64.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and other Alder stockholders, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and

omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

### Claims Against All Defendants for
### Violations of Section 14(e) of the Exchange Act

65.     Plaintiff repeats all previous allegations as if set forth in full.

66.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

67.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

68.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT III

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

69.     Plaintiff repeats all previous allegations as if set forth in full.

70.     The Individual Defendants acted as controlling persons of Alder within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Alder and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

71.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

73.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

74.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  September 27, 2019

**WEISSLAW LLP**

By _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*